09-0648-cr
USA v. Dorvee

AMENDED OPINION

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

August Term, 2009

(Argued: February 24, 2010                         Decided: May 11, 2010
                                                   Amended: August 4, 2010)

Docket No.  09-0648-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

— v .—

JUSTIN K. DORVEE,

*Defendant-Appellant.*

Before: CABRANES AND B.D. PARKER, *Circuit Judges*, and UNDERHILL, *District Judge.**

_____

Appeal challenging procedural and substantive reasonableness of sentence imposed following plea of guilty to one count of distribution of child pornography.  Vacated and remanded.

_____

Paul J. Angioletti, Staten Island, NY, *for Defendant-Appellant Justin K. Dorvee.*

Paul D. Silver, Assistant United States Attorney, *for* Richard T. Hartunian, United States Attorney, Northern District of New York (Thomas Spina, Jr., Paul Ryan Conan, and Brenda K. Sannes, Assistant United States Attorneys, *on the brief*), Albany, NY, *for Appellee United States of America.*

_____

* The Honorable Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

1

BARRINGTON D. PARKER, Circuit Judge:

Justin K. Dorvee pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). He was sentenced by the United States District Court for the Northern District of New York (McAvoy, *J.*) to the statutory maximum of 240 months, less 194 days for time served for a related state sentence. He challenges both the procedural and substantive reasonableness of his sentence. Our review of the record indicates that the district court never properly calculated Dorvee's Guidelines range which, we conclude, constitutes procedural error. We also conclude that the sentence imposed on Dorvee is substantively unreasonable. We therefore vacate the judgment and remand to the district court for resentencing.

## I. BACKGROUND

In his plea agreement, Dorvee admitted the following facts. On or about April 14, 2007, he began conversing online with someone he believed was a 14 year-old male named "Matt," but who in fact was an undercover officer for the Maryland Heights, Missouri Police Department. During this conversation, Dorvee discussed, among other things, his fetish for young boys' feet, and the fact that he had a "crush on males that are too young for him." Dorvee also sent Matt a number of computer images depicting boys between the ages of 11 and 15, which were not sexually explicit. App. 153.

Between October and June 2007, Dorvee conversed online with someone he believed was a 14 year-old male named "Seth" but who, again, was an undercover officer, this time with the Warren County, New York Sheriff's Office. The two engaged in sexually explicit conversations and Dorvee also sent him videos and images via the internet, including videos of minors engaging in sexually explicit conduct, and of Dorvee masturbating. During their conversations, Dorvee indicated

2

that he would like to meet, to photograph, and to engage in sexual conduct with Seth. On October 19, 2007, Dorvee arranged to meet Seth, and was arrested when he arrived for the meeting. At the time of his arrest, Dorvee had a camera in his backpack that he said he intended to use to photograph Seth's feet and penis. App. 153-54.

A search warrant executed at Dorvee's residence yielded computer disks and a computer containing several thousand still images and approximately 100 to 125 computer videos depicting minors engaged in sexually explicit conduct (as defined by 18 U.S.C. § 2256(2)). Some of the images depicted prepubescent minors, and others depicted sadomasochistic conduct. Dorvee traded these videos and images on the internet with approximately 20 other individuals. The Presentence Investigation Report (PSR), prepared for the district court by the probation office, indicated that he admitted to taking approximately 300 non-explicit photographs of neighborhood children in public in an attempt to capture images of their feet. PSR ¶ 27.

Dorvee was subsequently indicted and agreed to plead guilty. At the time of his plea to the federal charges, Dorvee had already pled guilty to two state charges based on the same conduct: Attempted Use of a Child in a Sexual Performance (N.Y.P.L. §§ 110, 263.05), and Possession of a Sexual Performance by a Child (N.Y.P.L. § 263.16). Dorvee was sentenced to 7 to 21 years of incarceration by the state court. PSR ¶ 44.

The PSR initially calculated a Guidelines range of 262 to 327 months, based on a total offense level of 39 and a criminal history category of I. Importantly, however, the PSR noted that because the statutory maximum for the offense of conviction is twenty years of incarceration, "the Guideline range is 240 months." PSR ¶ 63. In reaching its preliminary calculation of 262 to 327 months, the PSR stated that the base offense level was 22, and applied the following sentencing

enhancements: (1) a two-level increase pursuant to U.S.S.G. § 2G2.2(b)(2) because "the material involved a prepubescent minor or a minor who had not attained the age of 12 years"; (2) a seven-level increase pursuant to § 2G2.2(b)(3)(E) because the offense involved "[d]istribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct"; (3) a four-level increase pursuant to § 2G2.2(b)(4) because "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence"; (4) a two-level increase pursuant to § 2G2.2(b)(6) because the offense "involved the use of a computer"; and (5) a five-level increase pursuant to § 2G2.2(b)(7) because the offense involved 600 or more images.[1] Pursuant to § 3E1.1, the PSR subtracted three levels for acceptance of responsibility, resulting in a total offense level of 39. U.S.S.G. § 2G2.2(b); PSR ¶¶ 30-42.

Dorvee submitted a sentencing memorandum challenging several of the enhancements and arguing for a non-Guidelines sentence on the ground that the statutory maximum punishment was substantively unreasonable under 18 U.S.C. § 3553(a). In support of his argument, Dorvee submitted reports from two therapists. Dr. Frank W. Isele, Ph.D., provided a lengthy psychological evaluation of Dorvee. Dr. Isele explained that Dorvee has been blind in one eye since birth, at times

---

[1] In calculating the appropriate Guidelines range, a district court is instructed to "[d]etermine the base offense level and apply any appropriate specific offense characteristics . . . contained in the [applicable] guideline in Chapter Two." U.S.S.G. § 1B1.1(b). A district court is therefore required to determine whether any adjustments – in this case "enhancements" under U.S.S.G. § 2G2.2 – in Chapter Two apply and, if so, adjust the defendant's base offense level (and, thereby, his Guidelines range). These "enhancements" are distinguishable from an "upward departure" by which a sentencing court, after properly calculating the applicable Guidelines range, determines that a departure upwards from that range is warranted. *See* U.S.S.G. § 1B1.1 application n.1(E) (defining "upward departure" as a "departure that effects a sentence greater than a sentence that could be imposed under the applicable guideline range or a sentence that is otherwise greater than the guideline sentence.").

does not eat for days under severe stress, has experienced suicidal ideation, is so shy that he does not use a phone, and "never even so much as attended another child's birthday party when he was growing up" because he had (and, indeed, still has) no friends. App. 64. Dr. Isele attributed Dorvee's social isolation largely to anxiety stemming from his sexuality— Dorvee is homosexual. Dorvee has a hobby of compulsively collecting memorabilia (e.g., anything bearing the "John Deere" insignia), and Dr. Isele attributed Dorvee's cataloguing of pornographic images to this same tendency. Dr. Isele concluded that Dorvee "is suffering from a severe Major Depressive Disorder complicated by a profound Schizoid Personality Disorder," App. 69, and is "socially isolated, anxious . . . [and] frankly suicidal," App. 66. As a result, Dr. Isele emphasized, Dorvee "is simply too passive, shy, socially anxious, retiring, introverted, submissive, unsure of himself and distrustful" to "push or develop a relationship with any other person, child or adult, unless the other person took the lead," App. 68, and concluded that Dorvee is "not a predator" and "does not have the personality to actively initiate any dangerous actions," App. 70. Dr. Isele expressed the view that Dorvee "would never have arranged to meet" the undercover officer had the officer "not persisted in having the meeting," and therefore Dorvee is "unlikely to re-offend . . . [if] he obtains the necessary treatment and counseling." App. 71. John Engelbrecht, M.A, who provided Dorvee psychotherapy following his arrest, also diagnosed Dorvee with depression.

At sentencing, the district court directly addressed Dorvee's medical evidence. The court expressed sympathy for Dorvee's various mental issues, and agreed that Dorvee would never "go out and drag some little boy off the street and rape him and murder him." App. 135-36. Nevertheless, the court concluded that Dorvee was a "pedophile" who, if "given the opportunity . . . would have sexual relations . . . with a younger boy, ages 6 to 15." App. 136. The court did not

5

think Dorvee would "initiate[]" such behavior, but was wary of "a situation where it came about," which posed a "danger as far as the Court is concerned, because no one knows what's going to happen in the future." App. 136. The court noted that its opinion was informed by the pictures Dorvee took of neighborhood children's feet, which might "erupt into something." App. 138.

Once it concluded its analysis of the medical evidence, the court briefly discussed certain of the sentencing factors in 18 U.S.C. § 3553. First, the court concluded that Dorvee needed to be specifically deterred from re-offending, and that its sentence would also "send a message" to others inclined to distribute child pornography. App. 139; *see* 18 U.S.C. § 3553(a)(2)(B). Second, the court concluded that there was "a strong need to protect the public from the type of harm or hurt that the Court has described." App. 139; *see* 18 U.S.C. § 3553(a)(2)(C). Third, the court concluded that "there's a very strong need for rehabilitation." App. 140; *see* 18 U.S.C. § 3553(a)(2)(D).

Directly following its analysis of § 3553, the district court stated:

So the Court has found the total offense level to be a 39, the criminal history category to be a I, and the guideline imprisonment range is 262 to 327 months, but the statutory maximum is 240 months. So the Court is going to credit Justin for the time that he's already served in State court, which is reported to be six months and fourteen days.

App. 140. The court then announced its sentence of 233 months and 16 days, to run concurrently with the undischarged state term of imprisonment.

After explaining other components of the sentence, such as supervised release and restrictions on Dorvee's contact with minors, the district court revisited the issue of a non-Guidelines sentence. It stated:

The Court just wants to make the record a little more complete in the application for a non-guideline sentence. The Court understands that full well that after *Booker*, *Fanfan*, *Kimbrough*, and all the other cases that have addressed the Sentencing Guidelines as being advisory as opposed to being mandatory, the Court understands

6

full well they're not mandatory, but the Court understands full well if it's going to give a non-guideline sentence, it has to articulate a reason in connection with all the facts and circumstances of this case why that would be appropriate.

One of the factors the Court has to consider is how far below the guidelines any non-guideline sentence would go. And here, the guideline sentence is 262 to 327, and a sentence imposed, as the Court did, giving credit for the time served is relatively far below the guideline, although not terribly far, and probably will be upheld at least in that connection with the Court's decision. The rest of the sentence, the length of the sentence certainly can be challenged. There are lots of arguments which can be made that it's excessive. And the Court doesn't believe that it is. The Court thinks that it's enough but not more than necessary.

App. 145. Dorvee's counsel made no objection to these remarks, other than to ask that the court specifically recommend that Dorvee be incarcerated near a facility where he could receive treatment.

## II.     DISCUSSION

Dorvee argues to us that his sentence should be vacated for three reasons: (1) the sentence is procedurally unreasonable because the district court erroneously calculated the Guidelines range; (2) the sentence is substantively unreasonable; and (3) the amendment process used to enact U.S.S.G. § 2G2.2(b)(7) was unconstitutional. We agree with his first two contentions, and therefore do not reach the third.

### A.     Standard of Review

We review all sentences using a "deferential abuse-of-discretion standard." *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). Our review has two components: procedural review and substantive review. *Id.* We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to

7

adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States,* 552 U.S. 38, 51 (2007).  Once we have determined that the sentence is procedurally sound, we then review the substantive reasonableness of the sentence, reversing only when the trial court's sentence "cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (internal quotation marks omitted).

Dorvee raised in the district court some but not all of the issues he presses on appeal.  In addition to the sentencing brief filed by his trial counsel, Dorvee himself submitted a Pre-Sentencing Memorandum that the district court reviewed and considered.  Between those two briefs, Dorvee raised all of the Guidelines enhancements that he complains about on appeal – and the government responded to each of them, directly or indirectly, in the district court.  To preserve an objection for appellate review, a defendant must articulate it to the trial court "with sufficient distinctness to alert the court to the nature of the claimed defect." *United States v. Gallerani*  68 F.3d 611, 617 (2d Cir. 1995); *see United States v. Kwong*, 14 F.3d 189, 195 (2d Cir. 1994); *United States v. Civelli*, 883 F.2d 191,194 (2d Cir.), *cert. denied*, 493 U.S. 966 (1989).  That standard has been met with respect to the Guideline enhancements issues.  Dorvee, however, failed to preserve his contention that the district court miscalculated the Guidelines range by failing to recognize that the statutory maximum of 240 months – as opposed to 262 to 327 months – of incarceration represented the Guidelines sentence.  We therefore review this last claim for plain error.  *See* Fed. R. Crim. P. 52(b); *United States v. Parker*, 577 F.3d 143, 145 (2d Cir. 2009).[2]

---

[2] For plain error, we must find (1) error, (2) that is plain, and (3) that affects substantial rights; if these three conditions are met, we have discretion to notice the forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Irving,* 554 F.3d 64, 78 (2d Cir. 2009).

**B. Analysis**

**1. Procedural Error**

Dorvee raises two procedural claims on appeal: (1) the district court misapplied various sentencing enhancements found in U.S.S.G. § 2G2.2, and (2) it miscalculated the applicable Guidelines range by failing to recognize that the statutory maximum sentence operated as the Guidelines sentence. As to the first contention, we do not agree that the district court misapplied the enhancements. Subsection 2G2.2(b)(7)(D) increases the offense level by five if the offense involved 600 or more images, § 2G2.2(b)(4) increases the offense level by four if the offense involved material portraying sadistic or masochistic conduct, and § 2G2.2(b)(3)(E) increases the offense level by seven if the distributed images were intended to entice a minor. Dorvee challenges the application of subsections (b)(7)(D) and (b)(4) on the ground that he only distributed a handful of non-sadistic images to the undercover agent, and should not have his sentence for distribution enhanced based on the possession of images that he never distributed. Reviewing for plain error, we believe that the district court could have concluded that Dorvee's child pornography collection was "part of the same course of conduct or common scheme or plan as the offense of conviction." *See* U.S.S.G. § 1B1.3(a)(2).

Next, Dorvee argues that the images were not intended to "entice" a minor, under subsection (b)(3)(E), because he did not send any images to the undercover agent until after they had already arranged a meeting. We do not believe that the district court was clearly erroneous in finding, as a matter of fact, that these images were sent as part of a "grooming" process to persuade the agent to engage in the type of sexual conduct depicted in the images. *United States v. Brand,* 467 F.3d 179, 203 (2d Cir. 2006).

Second, Dorvee argues that the district court erroneously found the Guidelines sentence to be 262 to 327 months, when in fact the Guidelines sentence was the statutory maximum penalty of 240 months. "A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall,* 552 U.S. at 49. Once the proper Guidelines sentence has been ascertained, a sentencing court should consider the § 3553(a) factors to determine whether a non-Guidelines sentence is warranted. *Id.* at 50. When a district court considers the § 3553(a) factors, the Guidelines sentence serves as "the starting point and initial benchmark," and any court issuing a sentence outside the Guidelines "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 49-50. After announcing the sentence, the judge "must adequately explain the chosen sentence to allow for meaningful appellate review." *Id.* at 50.

U.S.S.G. § 5G1.1(a) addresses cases where the initial Guidelines calculation exceeds the statutory maximum: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." Based on this provision, the PSR properly concluded that the actual Guidelines sentence was the statutory maximum of 240 months. PSR ¶ 63. The district court, however, never indicated whether it reached this same crucial conclusion. To the contrary, the district court twice stated that the operative Guidelines range was 262 to 327 months. App. 140, 145. The district court never correctly stated that the operative Guidelines range was 240 months' imprisonment, either by indicating the Guidelines range on the record at sentencing or by adopting at sentencing the PSR's statement of the applicable Guidelines range. Thus, we conclude that the district court failed to apply section 5G1.1(a) correctly.

The district court understood that it could not give Dorvee a sentence above the statutory maximum, as evidenced by its statement that "the guideline imprisonment range is 262 to 327 months, but the statutory maximum is 240 months." App. 140. Even so, the district court indicated that it was under the misconception that the Guidelines sentence was still 262 to 327 months. Discussing Dorvee's application for a non-Guidelines sentence, the court recognized that "[o]ne of the factors the Court has to consider is how far below the guidelines any non-guideline sentence would go," and then immediately stated that "here, the guideline sentence is 262 to 327." App. 145. The court reasoned that its sentence of 233 months of incarceration, which represented the statutory maximum minus credit for time served, was "relatively far below the guideline, although not terribly far." App. 145.

Based on these statements, the district court plainly erred in its Guidelines calculation: the Guidelines sentence was not 262 to 327 months, it was the statutory maximum. *See* U.S.S.G. § 5G1.1(a). Yet the district court continued to treat 262 to 327 months as though it were the benchmark for any variance. By any reasonable view, 233 months is not "relatively far" below the 240-month Guideline. In fact, as the government concedes, 233 months actually represents a *within-*Guidelines sentence, because U.S.S.G. § 5G1.3(b)(1) provides that "the court shall adjust the sentence for any period of imprisonment already served" for another offense that is relevant conduct to the offense of conviction.[3]

---

[3] During the sentencing hearing, the court did not state its rationale for giving Dorvee credit for his time in state custody. *See* App. 140. However, the district court's judgment, entered five days later, specifies that the court "credited the defendant pursuant to U.S.S.G. § 5G1.3 with six months, 14 days for which he will not otherwise receive credit by the Federal Bureau of Prisons." Judgment, D. Ct. Doc. No. 25, *United States v. Dorvee,* 08-cr-514 (N.D.N.Y. Feb. 17, 2009). This is consistent with the PSR, which proposed adjusting the Guidelines sentence under § 5G1.3. PSR ¶ 63. Accordingly, it appears that the district court

11

The district court's miscalculation of the Guidelines sentencing range carried serious consequences for the defendant. *See United States v. Fagans*, 406 F.3d 138, 141 (2d Cir. 2005) ("[A]n incorrect calculation of the applicable Guidelines range will taint not only a Guidelines sentence, if one is imposed, but also a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference.").[4] It appears that the district court believed it was imposing a non-Guidelines sentence when, in fact, it selected a sentence conforming exactly to the Guidelines. If the district court intended to grant the defendant a sentence "relatively far below the guideline," Dorvee did not receive the benefit of such an intention. This situation illustrates why we require district courts to accurately calculate the Guidelines sentence before considering the § 3553(a) factors. The Guidelines range (or, in this case, the Guidelines direction to apply the statutory maximum) represents the Sentencing Commission's considered opinion about what the sentence should be in an "ordinary" case, and therefore serves as the district court's "starting point" in selecting a sentence. *Kimbrough v. United States,* 552 U.S. 85, 108 (2007). The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *see Kimbrough,* 552 U.S. at 108-10. If the district court miscalculates the typical sentence at the outset, it cannot properly account for

reduced Dorvee's sentence to 233 months pursuant to the Guidelines, even though it expressed its intention to issue a sentence "relatively far below the guideline" during the sentencing hearing.

[4] The government disagrees and argues that the district court's comments indicate an intention to *deny* the motion for a non-Guidelines sentence. The fact that the district court's statements leave unclear whether it granted or denied the motion for a non-Guidelines sentence provides a further indication of procedural error and the need to remand.

atypical factors and we, in turn, cannot be sure that the court has adequately considered the § 3553(a) factors. That is what happened here, and constitutes procedural error. *See Gall,* 552 U.S. at 51.

## 2. Substantive Error

We have previously recognized that, in those cases where we identify significant procedural error, "one proper course would be to remand to the district court so that it can either explain what it was trying to do, or correct its mistake and exercise its discretion anew," rather than proceeding to our substantive review. *Cavera,* 550 F.3d at 190. Other proper courses are also appropriate. As Judge Cabranes has pointed out, "nothing in our existing sentencing law" prevents us from reaching both the procedural and substantive reasonableness of the sentence in the course of an appeal where we find both types of error. *See United States v. Stewart,* 597 F.3d 514, 525 (2d Cir. 2010) (Cabranes, *J.*, dissenting in vote to deny rehearing *en banc*); *see also United States v. Ressam,* 593 F.3d 1095, 1130-31 (9th Cir. 2010) (reviewing for and finding both procedural error and substantive unreasonableness during the course of one appeal). It is especially appropriate to reach the matter of substantive unreasonableness now because we have found and identify here certain serious flaws in U.S.S.G. § 2G2.2— issues which are squarely presented on *this* appeal and which must be dealt with by the district court at resentencing. Addressing both squarely presented issues on this appeal is also in the interest of judicial economy. *See, e.g., Cameron v. City of New York*, 598 F.3d 50, 54 (2d Cir. 2010).

Even where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the § 3553(a) sentencing factors. *See Cavera,* 550 F.3d at 189. Under

13

§ 3553(a)'s "parsimony clause," it is the sentencing court's duty to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth" at 18 U.S.C. § 3553(a)(2).[5] *United States v. Samas,* 561 F.3d 108, 110 (2d Cir. 2009). In applying § 3553(a) and its parsimony clause, the court must look to "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and the Guidelines themselves, 18 U.S.C. § 3553(a)(5). In conducting this review, a district court needs to be mindful of the fact that it is "emphatically clear" that the "Guidelines are guidelines— that is, they are truly advisory." *Cavera,* 550 F.3d at 189.

As we have explained, Dorvee's sentence was a within-Guidelines sentence. However, we do not presume that such sentences are reasonable when we review them substantively. *See United States v. Fernandez,* 443 F.3d 19, 27 (2d Cir. 2006) (declining to establish "any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable"). In *United States v. Rigas,* 583 F.3d 108 (2d Cir. 2009), we elaborated on the definition of substantive reasonableness. We likened our substantive review to the consideration of a motion for a new criminal jury trial, which should

---

[5] Those four purposes are:

> [T]he need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

14

be granted only when the jury's verdict was "manifestly unjust," and to the determination of intentional torts by state actors, which should be found only if the alleged tort "shocks the conscience." *Rigas,* 583 F.3d at 122-23. We concluded that substantive reasonableness review is intended to "provide a backstop" against sentences that are "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Id.* at 123. We also emphasized that substantive reasonableness review is not an opportunity for "tinkering" with sentences we disagree with, and that we place "great trust" in sentencing courts. *Id.*

Though we recognize the importance of punishment and deference, we nevertheless find Dorvee's sentence substantively unreasonable. First, we are troubled by the district court's apparent assumption that Dorvee was likely to actually sexually assault a child, a view unsupported by the record evidence yet one that plainly motivated the court's perceived need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). We believe that this assumption, in the face of expert record evidence to the contrary, caused the district court to place unreasonable weight on this sentencing factor. *See Cavera,* 550 F.3d at 191 ("At the substantive stage of reasonableness review, an appellate court may consider whether a factor relied on by a sentencing court can bear the weight assigned to it."). Although presented with medical evidence that Dorvee was unlikely to engage in a personal relationship "unless the other person took the lead" – as the undercover agent posing as "Seth" had[6] – the district court's comments at sentencing reveal that the court was convinced that Dorvee was a "pedophile" likely to engage in sexual conduct with a minor. The court stated that although it believed Dorvee would not initiate a relationship with a child, "if

---

[6] According to the PSR, the detective set up a "MySpace account" and sent a message to Dorvee's MySpace account "to initiate contact." PSR ¶ 10.

he were given the opportunity, he would have sexual relations . . . with a younger boy." App. 136. The district court stated that "[f]or an adult of Justin's age to engage in sexual conduct with somebody under the age of 14 . . . I think is extremely hurtful. . . . [I]t might be worse than sticking somebody with a knife or shooting them with a gun." *Id.* Dorvee, however, is not alleged to have had any actual contact with children (undercover or real) under 14, and admitted only to taking non-explicit photographs of children's feet. Dorvee appears to have been punished as though he already had, or would, sexually assault a child, despite medical testimony to the contrary and Dorvee's lack of any such criminal history. The irony of the court's conclusion in this area, as we explain below, is that the Guidelines actually punish some forms of direct sexual contact with minors *more leniently* than possession or distribution of child pornography.

Similarly, the district court's cursory explanation of its deterrence rationale ignored the parsimony clause. "Plainly, if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not . . . impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). Here, the district court provided no reason why the maximum sentence of incarceration was required to deter Dorvee and offenders with similar history and characteristics. Moreover, the district court offered no clear reason why the maximum available sentence, as opposed to some lower sentence, was required to deter an offender like Dorvee.

Finally, we are also troubled that the district court seems to have considered it a foregone conclusion that the statutory maximum sentence "probably [would] be upheld" on appeal, apparently because it concluded that its sentence was "relatively far below" the initial Guidelines calculation of 262 to 327 months. App. 145. In all events, even a statutory maximum sentence must be

16

analyzed using the § 3553(a) factors. As the Supreme Court made clear in *Gall*, the amount by which a sentence deviates from the applicable Guidelines range is not the measure of how "reasonable" a sentence is. Reasonableness is determined instead by the district court's individualized application of the statutory sentencing factors. *See Gall,* 552 U.S. at 46-47.

These errors were compounded by the fact that the district court was working with a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires. Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *See Rita,* 551 U.S. at 349. However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties. *See* United States Sentencing Commission, *The History of the Child Pornography Guidelines,* Oct. 2009, *available at* http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines.pdf (last visited April 19, 2010).[7] Alan Vinegrad, the former United States Attorney for the Eastern

---

[7] For specific examples, *see* Amendment 372, U.S.S.G. App. C (1991) (responding to the Treasury, Postal Service and General Government Appropriations Act, Pub. L. No. 102-141, § 632, 105 Stat. 834 (1991)); Amendment 537, U.S.S.G. App. C (1996) (responding to the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, §§ 2-4, 6, 109 Stat. 774 (1995)); Amendment 592, U.S.S.G. App. C. (2000) (responding to the Protection of Children From Sexual Predators Act of 1998, Pub. L. No. 105-314, §§ 506-507, 112 Stat. 2974 (1998)); and Amendments 649, U.S.S.G. App. C. (2003) and 664, U.S.S.G.App. C (2004) (responding to the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108 P.L. 21, § 401, 117 Stat. 650 (2003)).

The PROTECT Act of 2003 instructed the Commission to amend § 2G2.2 to include the number-of-images enhancements, which are currently codified at § 2G2.2(b)(7) and range from two levels to five levels. The PROTECT Act also instituted the current statutory minimum and maximum sentences for possession and distribution of child pornography. Notably, the

District of New York, has noted that the recent changes effected by the PROTECT Act of 2003 evince a "blatant" disregard for the Commission and are "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress," as Congress:

> (i) adopted sentencing reforms without consulting the Commission, (ii) ignored the statutorily-prescribed process for creating guideline amendments, (iii) amended the Guidelines directly through legislation, (iv) required that sentencing data be furnished directly to Congress rather than to the Commission, (v) directed the Commission to reduce the frequency of downward departures regardless of the Commission's view of the necessity of such a measure, and (vi) prohibited the Commission from promulgating any new downward departure guidelines for the next two years.

Alan Vinegrad, *The New Federal Sentencing Law*, 15 Fed. Sent. R. 310, 315 (June 2003). The PROTECT Act of 2003 was the first instance since the inception of the Guidelines where Congress directly amended the *Guidelines Manual*. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, 2004, at 72, available at http://www.ussc.gov/15_year/chap2.pdf (last visited April 15, 2010).

The Commission has often openly opposed these Congressionally directed changes. In 1991, as Congress was considering a proposal to direct the Commission to alter the child pornography Guidelines (by revoking the Commission's earlier creation of a new, lower base level for receipt, possession, and transportation of images than for sale or possession with intent to sell), the Chair of the Commission wrote to the House of Representatives stating that the proposed

---

Sentencing Commission was neither informed nor consulted on the passage of these changes, and the legislative history surrounding them offered no study or empirical justification for them. *See* Skye Phillips, *Protect Downward Departures: Congress and Executive's Intrusion into Judicial Independence*, 12 J.L. & POL'Y 947, 967-84 (2004).

Congressional action "would negate the Commission's carefully structured efforts to treat similar conduct similarly and to provide proportionality among different grades of seriousness," and would instead "require the Commission to rewrite the guidelines for these offenses in a manner that will reintroduce sentencing disparity among similar defendants." *See* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, January 1, 2009, at 4-9, available at http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf (unpublished Comment, last visited July 28, 2010). Congress did not follow the Chair's advice. In 1996, the Commission criticized the two-level computer enhancement (which is currently set forth at § 2G2.2(b)(6) and was adopted pursuant to statutory direction) on the ground that it fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. *See* United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties*, June 1996, at 25-30, available at http://www.ussc.gov/r_congress/SCAC.PDF (last visited April 15, 2010).[8] Speaking broadly, the Commission has also noted that "specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice*

---

[8] Congress directed that the Guidelines be amended to include a computer enhancement of *at least* two levels when it passed the Sex Crimes Against Children Prevention Act of 1995 (SCACPA), Pub. L. 104-71 (1995). The SCACPA also required the Commission to submit a report to Congress concerning offenses involving child pornography, and although the Commission criticized the enhancement in that statutorily-required report, Congress was not persuaded by the Commission's advice.

*System is Achieving the Goals of Sentencing Reform, supra*, at 73.

The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases. The base offense level for distribution of child pornography, which in 1991 was 13, has been gradually increased to 22 as the Commission has attempted to square the Guidelines with Congress's various directives. *See* United States Sentencing Commission, *The History of the Child Pornography Guidelines*, *supra*, at 19. On top of that, many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to § 2G2.2(b)(7)(D)).[9] *See* United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009*, available at http://www.ussc.gov/gl_freq/09_glinexgline.pdf (last visited April 19, 2010). In sum, these enhancements, which apply to the vast majority of defendants sentenced under § 2G2.2, add up to 13 levels, resulting in a typical total offense level of 35.

An ordinary first-time offender is therefore likely to qualify for a sentence of at least 168 to 210 months, rapidly approaching the statutory maximum, based solely on sentencing enhancements

---

[9] While this number may seem high, the large number of images possessed by individuals convicted of child pornography likely stems from the fact that the Guidelines count each video as 75 images. *See* Application Note 4, U.S.S.G. § 2G2.2. It is also worth noting that 96.6% of defendants received at least a two-level enhancement based on the number of images possessed.

that are all but inherent to the crime of conviction.[10]  Consequently, adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories.  This result is fundamentally incompatible with § 3553(a).  By concentrating all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and violates the principle, reinforced in *Gall,* that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct.  *See Gall,* 552 U.S. at 55 (affirming a sentence where "it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated" (emphasis in original)).

The irrationality in § 2G2.2 is easily illustrated by two examples.  Had Dorvee actually engaged in sexual conduct with a minor, his applicable Guidelines range could have been considerably lower.  An adult who intentionally seeks out and contacts a twelve year-old on the internet, convinces the child to meet and to cross state lines for the meeting, and then engages in repeated sex with the child, would qualify for a total offense level of 34, resulting in a Guidelines range of 151 to 188 months in prison for an offender with a criminal history category of I.[11]  Dorvee,

---

[10] This does not take into account any potential reductions for acceptance of responsibility.

[11] This hypothetical individual has violated 18 U.S.C. § 2422(b), transportation for illegal sexual activity, which falls under U.S.S.G. § 2G1.3.  Starting at a base level of 28, the offender qualifies for enhancements for unduly influencing the child to engage in prohibited sexual conduct (two levels pursuant to § 2G1.3(b)(2)), use of a computer (two levels pursuant to §

21

who never had any contact with an actual minor, was sentenced by the district court to 233 months of incarceration. What is highly ironic is that the district court justified its 233-month sentence based on its fear that Dorvee *would* sexually assault a child in the future.

A defendant convicted under 18 U.S.C. § 2252A(a)(5) of possessing on his computer two nonviolent videos of seventeen-year-olds engaging in consensual sexual conduct qualifies for a base offense level of 18 under § 2G2.2(a)(1), a two-level enhancement for use of a computer under § 2G2.2(b)(6), and a three-level enhancement for number of images under § 2G2.2(b)(7)(B). Even with no criminal history, this individual's total offense level of 23 would result in a Guidelines sentence of 46 to 57 months. This is the same Guidelines sentence as that for an individual with prior criminal convictions placing him in a criminal history category of II, who has been convicted of an aggravated assault with a firearm that resulted in bodily injury.[12]

The Sentencing Commission is, of course, an agency like any other. Because the Commission's Guidelines lack the force of law, as the Supreme Court held in *United States v. Booker*, 543 U.S. 220, 245, 264 (2005), sentencing courts are no longer bound to apply the Guidelines. But, in light of the Sentencing Commission's relative expertise, sentencing courts "must consult those Guidelines and take them into account when sentencing." *Id.* This deference to the Guidelines is not absolute or even controlling; rather, like our review of many agency determinations, "[t]he weight of such a judgment in a particular case will depend upon the

---

2G1.3(b)(3)), and commission of a sex act (two levels pursuant to § 2G1.3(b)(4)), for a total offense level of 34.

[12] This hypothetical individual has been sentenced under U.S.S.G. § 2A2.2, which carries a base offense level of 14, with a four-level enhancement for use of a dangerous weapon such as a firearm (§ 2G2.2(b)(2)(B)) and a three-level enhancement for causing bodily injury (§ 2A2.2(b)(3)(A)).

thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Kimbrough*, 552 U.S. at 109 (citing the crack cocaine Guidelines as an example of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role"). On a case-by-case basis, courts are to consider the "specialized experience and broader investigations and information available to the agency" as it compares to their own technical or other expertise at sentencing and, on that basis, determine the weight owed to the Commission's Guidelines. *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (internal quotation marks omitted) (citing *Skidmore*, 323 U.S. at 139); *see Gall*, 552 U.S. at 51.

In keeping with these principles, in *Kimbrough*, the Supreme Court held that it was not an abuse of discretion for a district court to conclude that the Guidelines' treatment of crack cocaine convictions typically yields a sentence "greater than necessary" to achieve the goals of § 3553(a), because those particular Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough*, 552 U.S. at 109-10. As we have explained here, the same is true for the child pornography enhancements found at § 2G2.2. Following *Kimbrough*, we held that "a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *Cavera*, 550 F.3d at 191. That analysis applies with full force to § 2G2.2.

District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 – ones that can range from non-custodial sentences to the statutory maximum – bearing in mind that they are dealing with an eccentric Guideline of highly

23

unusual provenance which, unless carefully applied, can easily generate unreasonable results. While we recognize that enforcing federal prohibitions on child pornography is of the utmost importance, it would be manifestly unjust to let Dorvee's sentence stand. We conclude that Dorvee's sentence was substantively unreasonable and, accordingly, must be revisited by the district court on remand.

## Conclusion

For the foregoing reasons, the sentence is vacated and remanded to the district court for resentencing.