*910 BRIGHT, Circuit Judge,
concurring in part and dissenting in part.
I concur in the denial of the motion to suppress and affirmance of Brewer’s convictions but dissent as to the sentence.
Who could have guessed that President Eisenhower’s decision nearly sixty years ago to create a national system of interstate highways would have an effect on sentencing in Iowa today? Well, it has. In the Northern District of Iowa, cases arising on one side of the interstate go to one district court judge while cases arising on the other go to a second judge. And one active judge uses a 1:1 ratio between crack and powder cocaine when sentencing violators of crack cocaine laws while the other follows the sentencing guidelines— which here applied a 33:1 ratio.[8] So in the Northern District of Iowa, the location of the crime relative to the interstate is a significant factor in crack cocaine sentencing. In my view, the difference in sentences between similar offenders should not depend on which side of the interstate a crime was committed or where the offender was arrested. See United States v. Ayala, 610 F.3d 1035, 1037-38 (8th Cir. 2010) (Bright, J., concurring) (discussing the need to reduce sentencing disparity in the post-Booker era).
For Brewer’s crime of possessing, conspiring, and delivering approximately 150 grams of crack cocaine, the guidelines recommended a sentence of 30 years to life.[9] That’s the same recommendation as if Brewer had committed second-degree murder. Unfortunately, equating crack cocaine with murder is not uncommon. See Robert Perkinson, Texas Tough: The Rise of America’s Prison Empire 336 (Metropolitan Books 2010) (Texas Tough) (“In 1995, the average federal prison term for a crack offense surpassed that of murder.”). Brewer requested a variance from the harsh crack cocaine guidelines on the basis of the disparity with powder cocaine and he cited a decision by Judge Bennett of the Northern District of Iowa who utilizes a 1:1 crack/powder ratio.[10]
The court imposed a 370-month sentence. That’s 30 years and 10 months.[11] The district court denied Brewer’s request for a variance, stating “I did consider and reject the request for a variance based on *911 the disparity in punishment between crack cocaine and cocaine. As I looked at the statutory factors under 18 U.S.C. 3553(a), I determined that, on balance, this sentence was not out of the range of reasonableness and is fully supported by the evidence.”
The majority affirms, concluding that the district court was not required to vary downward on the basis of the crack/powder disparity. But I believe the district court’s decision does not reflect a reasoned and informed exercise of discretion.[12] The district court cavalierly applied a guideline which often does not comply with § 3553(a) in the mine-run case, treats Brewer like a murderer, and results in unwarranted intra-district disparity. Sadly, the interstate and corresponding judicial assignment made a substantial difference at Brewer’s sentencing.
Although the Supreme Court’s recent sentencing jurisprudence emphasizes district court discretion, see Gall v. United States, 552 U.S. 38, 59-60, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), and particularly with respect to the crack/powder disparity, see Kimbrough v. United States, 552 U.S. 85, 110, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007); Spears v. United States, — U.S. -, 129 S.Ct. 840, 843-44, 172 L.Ed.2d 596 (2009), surely the Supreme Court has not meant to approve a sentencing world in which the assignment of a case to a specific judge becomes a meaningful and significant factor at sentencing.[13] The denial of a request for a variance on the basis of the crack/powder disparity should require more than a simple “No.” How much more? At least some explanation of how a sentence predicated on the crack cocaine guidelines complies with the principal that a sentence be sufficient but not greater than necessary. See 18 U.S.C. § 3553(a). Why should this be the rule? For one, relying on the crack cocaine guidelines to recommend a sentence sufficient but not greater than necessary is suspect. Compare Rita v. United States, 551 U.S. 338, 347-48, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (explaining the process by which the Commission attempts to carry out the § 3553(a) objectives “wholesale”), with Kimbrough, 552 U.S. at 109, 128 S.Ct. 558 (stating that the crack cocaine guidelines “do not exemplify the Commission’s exercise of its characteristic institutional role”). For another, the need to avoid unwarranted disparity should call for district courts to consider and explain the imposition of a sentence inconsistent with other judges in the same federal district.
A. The Crack Cocaine Guidelines
The political climate surrounding the enactment of the Controlled Substances Act of 1986 (CSA) provides the first glimpse at how Congress and the Sentencing Commission created a crack cocaine sentencing scheme untethered to the goals of sentencing. As described by one insider, the political climate was “frenzied.” Ryan S. King & Marc Mauer, Sentencing with Discretion: Crack Cocaine Sentencing After Booker at 8 (Jan.2006), http://www. *912 sentencingproject.org/doc/publications/dp_ sentencing_cc_afterbooker.pdf. The CSA moved forward with “breakneck speed and little time for deliberation” in which “numbers were being pulled out of the air with no empirical foundation.” Id. The process was a “political power game” where “politicians tried to one-up each other with calls for more severe penalties.” Id. at 9 (quotation omitted).
The Sentencing Commission, notwithstanding the political power games underlying crack cocaine sentencing, adopted the 100:1 statutory ratio in creating the guidelines. See United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy at v (Feb.1995) (1995 Report). As observed by the Supreme Court, unlike the sentencing guidelines as a whole, the Commission “did not use [an] empirical approach in developing the Guidelines sentences for drug-trafficking offenses.” Kimbrough, 552 U.S. at 96, 128 S.Ct. 558. This lack of an empirical approach to the creation of guidelines for crack cocaine counsels against according controlling, or even significant, weight to the guidelines. See, e.g., United States v. Dorvee, 616 F.3d 174, 187-88 (2d Cir.2010) (holding that deference to the Guidelines depends on the thoroughness of the Commission’s analysis and the validity of its reasoning).
In its 1995 Special Report to Congress, the Sentencing Commission succinctly explained the problem: “the present 100-to-1 quantity ratio is too great.” 1995 Report at iii. The ratio “creates anomalous results by potentially punishing low-level (retail) crack dealers far more severely than their high-level (wholesale) suppliers of the powder cocaine that served as the product for conversion into crack.” Id. The Commission determined, “[d]espite the unprecedented level of public attention focused on crack cocaine, a substantial gap continues to exist between the anecdotal experiences that often prompt a call for action and empirical knowledge upon which to base sound policy.” Id. at vi. But Congress did nothing and left the federal courts to apply a guideline that had little persuasive force.
In 2002, the Commission again explained to Congress the unfairness of crack cocaine sentencing. The Commission found that quantity-based penalties (1) “overstate[] the relative harmfulness of crack cocaine” compared to powder cocaine; (2) “sweep too broadly” and “apply most often to lower level offenders[;]” (3) “overstate the seriousness of most crack cocaine offenses” and “fail to provide adequate proportionality^]” and (4) the “current penalties’ severity mostly impacts minorities[.]” United States Sentencing Commission, Report to the Congress: Cocaine and Federal Sentencing Policy 93, 97, 100, 102 (May 2002) (2002 Report).[14] Still, neither Con *913 gress nor the Commission took action to remedy these significant issues in crack cocaine sentencing.
In 2007, following the Booker “revolution,” the Commission attempted to remedy crack cocaine sentencing by reducing the base offense level for crack offenses by two levels. See U.S.S.G.App. C., amend. 706; see also Kimbrough, 552 U.S. at 99-100, 128 S.Ct. 558. “This modest amendment yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder.” Kimbrough, 552 U.S. at 100, 128 S.Ct. 558. The Commission described its “amendment as only ... a partial remedy for the problems generated by the crack/powder disparity.” Id. (quotation omitted). Consequently, the current crack guidelines, as amended in 2007, do not solve the problems identified in 2002, leaving federal courts to apply guidelines that overstate the harmfulness of crack cocaine, fail to provide adequate proportionality, and mostly impact minorities.
Given this history, it is little wonder that even after 2007, the crack cocaine guidelines recommend sentences that may not conform to § 3553(a) in the average case. See Kimbrough, 552 U.S. at 110, 128 S.Ct. 558. Accordingly, sentencing courts should carefully consider whether the crack guidelines recommend an appropriate sentence (in many cases they may not) and exercise caution in applying guidelines that too often yield unreasonable results. Here, treating the possession and delivery of 150 grams of crack cocaine as equivalent to murder is simply unreasonable. But that is not the only problem with Brewer’s sentence.
B. Unwarranted disparity
In Kimbrough, the Supreme Court determined that 18 U.S.C. § 3553(a)(6)[15] would work to prevent the sort of disparity observed in the Northern District of Iowa. In that case, the government argued that district courts should not be permitted to deviate from the guidelines based on disagreement with the crack/powder ratio. 552 U.S. at 107, 128 S.Ct. 558. The government argued that allowing sentencing courts such discretion could result in “defendants with identical real conduct” receiving “markedly different sentences, depending on nothing more than the particular judge drawn for sentencing.” Id. (quotation omitted).
*914 The Court rejected this argument, explaining that under 18 U.S.C. § 3553(a)(6), “district courts must take account of sentencing practices in other courts.... To reach an appropriate sentence, these disparities must be weighed against the other § 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself.” Id. at 108, 128 S.Ct. 558 (emphasis added). The implication of Kimbrough is clear: district courts have a responsibility to consider the sentencing practices of other courts; otherwise differences in sentencing similar offenders could result from something as meaningless as which side of the interstate an offense is committed.
Brewer properly sought a variance based on the crack/powder disparity. He argued that a guideline sentence would create unwarranted disparity with other Northern District of Iowa crack cocaine sentences and cited United States v. Gully, 619 F.Supp.2d 633 (N.D.Iowa 2009). In Gully, Judge Bennett thoroughly examined the crack/powder disparity and concluded the appropriate ratio was 1:1. Id. at 644. But here Judge Reade never accounted for the sentencing practice of her colleague and Brewer’s sentence may depend more on the judge he drew for sentencing than the factors in 18 U.S.C. § 3553(a).
The majority, by permitting district courts to say little or nothing in declining to vary from the crack cocaine guidelines, too easily sacrifices parity on the altar of discretion. To be sure, district courts are not required to vary from the crack guidelines on the basis of the crack/powder disparity. But in light of the history of the guidelines’ promulgation, their impact on minorities, and the Supreme Court’s remedy for disparity as discussed in Kimbrough, an exercise of discretion that concludes the crack/powder disparity does not warrant a variance requires more explanation than was done in this case.
Although § 3553(a) does not “insist[] upon a full opinion in every ease[,]” the statute “does call for the judge to state ... reasons.” Rita, 551 U.S. at 356, 127 S.Ct. 2456 (quotation omitted). Here, the lack of explanation for denying Brewer’s request for a variance can only undermine the public trust. See id. (“Judicial decisions are reasoned decisions. Confidence in a judge’s use of reason underlies the public’s trust in the judicial institution.”). The sentencing practices in the Northern District of Iowa may be those described in a recent report by the Justice Department: “More and more, we are receiving reports from our prosecutors that in many federal courts, a defendant’s sentence will largely be determined by the judicial assignment of the case; i.e. which judge in the courthouse will conduct the sentencing.... This is extremely problematic.... [T]he existence of these dichotomous regimes will, over time, breed disrespect for the federal courts.” U.S. Dept, of Justice, Criminal Division, Report to the United States Sentencing Commission at 2 (June 28, 2010).
I thus respectfully dissent. So long as differences in sentencing in the Northern District of Iowa are probably traceable to the location of a highway, the people of Iowa will question the propriety and fairness of sentencing. Even in this era of sentencing discretion, the judges in the Northern District of Iowa in particular, and across the country in general, have a responsibility to sentence drug offenders in a consistent and fair manner. I suggest that in remedying the crack cocaine sentencing disparity in the Northern District of Iowa, fairness favors Judge Bennett’s 1:1 ratio over the ratios currently recommended by the guidelines. This court *915 should vacate Brewer’s sentence and remand for further consideration.

. After the Sentencing Commission’s 2007 revisions to the Guidelines, the crack/powder ratio varies between 25 to 1 and 80 to 1. Kimbrough v. United States, 552 U.S. 85, 106, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). The Commission is currently contemplating revisions to the Guidelines pursuant to the Fair Sentencing Act of 2010.

. Brewer’s base offense level was 32, his total offense level was 38, and his criminal histoiy category was V. By way of comparison, for the same amount of powder cocaine, the guidelines recommend a sentence of approximately eight to nine years.

. Brewer faced a 20-year mandatory minimum sentence, and so he asked the judge to vary down from 30 to 20 years. Still a harsh sentence, but in this case, a sentencing court could go no lower absent Congressional action — which finally occurred on July 28, 2010, when President Obama signed the Fair Sentencing Act of 2010. If this new law were applied, Brewer would face a 10-year mandatory minimum. See Fair Sentencing Act of 2010, Pub.L. No. 111-220, § 2, 124 Stat. 2372 (2010).

.Brewer, by the way, was 32 years old when sentenced, so he will be out of prison sometime near 2040, when he is 60 years old. At the current cost of incarceration, about $26,000 per year, taxpayers will have spent around $780,000 to imprison Brewer. See 74 Fed.Reg. 33,279 (July 10, 2009) (reporting that in 2008, the average annual cost of incarceration for federal inmates was $25,895). Did I mention that this sentence was for 150 grams of crack sold to government agents on four occasions?

. I note that sometimes our court does not even require sentencing judges to respond to a defendant’s motion for a variance on the basis of the crack/powder disparity. See United States v. Bowie, 618 F.3d 802, 819-21 (8th Cir.2010) (Bright, J. dissenting) (concluding the majority erred in affirming the district court’s silence where the defendant properly sought a variance based on the crack/powder disparity).

. Having reviewed criminal appeals from the Northern District of Iowa, as well as studied this court’s opinions, this judge anecdotally observes that since Booker it appears one judge in this district frequently imposes below-guideline sentences while the other does so very rarely.

. The disproportionate impact of the crack cocaine guidelines on minorities should concern every federal judge, and provide another reason why guideline sentences for crack cocaine offenders warrant special attention. See Texas Tough at 336 ("By the early 1990s, nearly 90 percent of crack prosecutions targeted blacks, most of them low-level street dealers.").
The literature overwhelmingly establishes that minorities, especially African-American men, have unduly suffered from the harsh crack cocaine guidelines. "On any given day, nearly one-third of black men in their twenties are under the supervision of the criminal justice system — either behind bars, on probation, or on parole.” Dorothy E. Roberts, The Social and Moral Cost of Mass Incarceration in African Amencan Communities, 56 Stan. L.Rev. 1271, 1272 (2004) (Roberts); see also Carol A. Brook, Racial Disparity Under the Federal Sentencing Guidelines, 35 Litig., Fall 2008, at 1, 15. ("African-Americans alone make up almost 40 percent of the federal prison population, although they constitute *913 only 13 percent of our country’s population.”).
The disparity between Caucasian and African-American drug offenders cannot be explained by rates of drug use: "[ajlthough whites have a higher rate of illegal drug use, 60% of offenders imprisoned for drug charges in 1998 were black.” Roberts at 1275. "The increase in the rates of incarceration of young black males is due primarily to the focus of the 'war on drugs' on black drug users.” David H. Angeli, A “Second Look” at Crack Cocaine Sentencing Policies: One More Try for Federal Equal Protection, 34 Am.Crim. L.Rev. 1211, 1212 (1997); see also Roberts at 1275 ("The War on Drugs is responsible for this level of black incarceration.”).
These startling statistics should give pause to any court considering relying on the crack cocaine guidelines. Where the very creators of the guideline acknowledge the disproportionate impact on minorities, a request to vary from those guidelines merits careful consideration. Otherwise, federal courts run the risk of furthering the pernicious effects experienced by minorities as a result of guidelines that originated from political gamesmanship rather than a deliberate and thoughtful empirical approach.

. That section provides that district courts shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.” 18 U.S.C. § 3553(a)(6).