JACOBS, Chief Judge,
dissenting:
I respectfully dissent from the affirmance of the 30-year prison sentence and would remand for imposition of the 15-year mandatory minimum sentence. 18 U.S.C. § 2251(e).
Broxmeyer has been sentenced for two offenses against the federal sovereign: possession of child pornography, and attempted production. Since the maximum sentence for possession of the number of images he possessed is ten years, and since the mandatory minimum for attempted production is 15 years, I focus on the sentence for attempted production (as does the majority).
*298 Broxmeyer’s attempt consisted of inducing a 17-year old to take a lewd photo of herself. Under New York law, a 17-year old (such as the victim, K.T.) is of the age of consent. See N.Y. Penal Law § 130.05(3)(a); see also id. §§ 130.25, 130.40. She and Broxmeyer could do with each other whatever consenting adults may do behind closed doors in New York. True, the federal statute treats a 17-year old as a minor, 18 U.S.C. § 2256(1), so that a lewd photograph of her must be classified as child pornography. But surely it is an arresting irony that the only thing forbidden between Broxmeyer and K.T. was photography.
And the sentence was stiffened by reason of “distribution” because after she took the picture of herself she transmitted it to Broxmeyer. In short, the offense of conviction for which he was sentenced to thirty years imprisonment consisted in whole of sexting.[1]
I start there because a reader of the majority opinion may find it hard to keep in mind what Broxmeyer was convicted of, and what he was sentenced for. As the majority vigorously affirms, a sentencing court is not limited to the conduct giving rise to the offense of conviction. Nor is an appellate court so limited; and I would agree with much of what is said in the majority opinion if it were not cast as rebuttal to a caricature of my views. My objection is this: the offense of federal conviction has become just a peg on which to hang a comprehensive moral accounting. But in imposing a sentence that can be upheld as reasonable, a court should not lose sight of the offense of conviction.
I respectfully argue that the majority has done just that. In the fact section of the majority opinion, the offenses of conviction are embedded in graphic accounts (twice as long) of misconduct that (however egregious) forms no basis for either of the convictions for which Broxmeyer was sentenced. The fact segment of the majority opinion is largely preoccupied with an act underlying both [i] a federal Mann Act conviction (18 U.S.C. § 2423(a)) that was reversed,[2] and [ii] a state prosecution for which Broxmeyer was convicted and is imprisoned. Maj. Op. at 271-72. Much of the rest is a catalog account of sexual activities with other high school girls for which Broxmeyer could not be charged in federal court. Maj. Op. at 271-74. And it is not at all clear how much of this long fact recitation is premised on findings that were actually made by the district court.[3]
Moreover, the majority’s analysis does not rely on any of that misconduct; mainly, it primes and incites the reader, who might otherwise focus on the offense of conviction, and the fact that it amounts to a single act of attempted sexting.
When the majority opinion does get to the offense of conviction (attempted production), it is enlarged to include addition *299 al, subsequent conduct. True, Broxmeyer continued to importune K.T. to sext him nude pictures of herself, and did so with more success. But if that were the offense, Broxmeyer would have been charged with production itself, not the attempt. The prosecution chose not to do so, for its own (presumably sufficient) reasons. Maj. Op. at 282-88.
My conclusion is that it is error to impose a 30-year sentence for an offense that amounts to attempted sexting. My reasons are: [I] the statutory range from 15 to 30 years calls for a calibration according to severity of the offense; [II] the enhancements to base offense level do not bear the weight assigned to them; [III] the enhancement to the adjusted offense level for a pattern of sexual misconduct is unsustainable as a matter of law; [IV] the sentence is substantively unreasonable; and [V] the sentence is not supported by the 18 U.S.C. § 3553 factors.
I
For the offense of producing child pornography (and attempt), Congress opened a considerable range, of 15 to 30 years. Broxmeyer’s base offense level of 32 (which yields 121 to 151 months in his Criminal History Category) lies below the mandatory minimum. Various U.S. Sentencing Guidelines enhancements yielded a Guidelines sentence of life in prison. The enhancements were applied without manifest error; but a Guidelines calculation that so far exceeds the statutory maximum should give pause. In this instance, many of the enhancements reflect no incremental evil beyond the base offense itself. And the base offense itself is the eliciting of (in the majority’s words) a “suggestive, but not sexually explicit” self-photograph from a girl who was of the age of consent in New York — surely the least of the evils that Congress could have contemplated when it drafted the statute.
A substantively unreasonable sentence is rarely encountered. The standard is tough, as it ought to be. The sentence must do damage to the administration of justice because the sentence imposed was “shockingly high, shockingly low, or otherwise unsupportable as a matter of law.” United States v. Rigas, 583 F.3d 108, 123 (2d Cir.2009). But though rare, there are instances that justify vacatur. E.g., United States v. Stewart, 590 F.3d 93 (2d Cir.2009), reh’g denied, 597 F.3d 514 (2d Cir.), cert. denied sub nom., Sattar v. United States, — U.S. -, 130 S.Ct. 1924, 176 L.Ed.2d 404 (2010). Here, the administration of justice is damaged because the layers between mandatory minimum and statutory maximum have been foreshortened and flattened to a pancake. Thus, in a case in which the offense of conviction would seem to barely justify the minimum, the maximum has been made the minimum. Cf. United States v. Dorvee, 616 F.3d 174, 186-87 (2d Cir.2010) (as amended) (observing that, due to enhancements that “are all but inherent to” offenses involving child pornography, “[a]n ordinary first-time offender” is likely to receive a sentence “approaching the statutory maximum,” which leaves “virtually no distinction between the sentences” for relatively run-of-the-mill offenders and “the most dangerous offenders”).
II
How did this happen? First, several enhancements were imposed to increase the base offense level (this Section); then a pattern enhancement was applied to the adjusted offense level (Section III).
The one-level enhancement for grouping the two offenses of conviction is sound. All the others have no more than hyper-technical validity. In reviewing these en *300 hancements, it helps to keep in mind that Broxmeyer was convicted of attempt only because, though he encouraged K.T. to photograph herself without clothes, the single photo that became the subject of the prosecution was a snapshot she took of herself in her underwear.[4] I will take the enhancements one by one.
A two-point enhancement was imposed for “using a minor” because K.T. took the photo of herself. But the most natural reading of the enhancement is that it punishes the enlistment of another minor in the production end of the offense. In any event, one would think it is less harmful that the victim took the photograph herself, privately, than if it had been taken by somebody else.
A two-point- enhancement for abuse of trust was imposed because Broxmeyer was K.T.’s coach. This enhancement has a particular irony because no law — state or federal — was offended by his abuse of trust in entering into a sexual relationship with her. Abuse of trust is surely a consideration of diminished force when the victim is of the age of consent. Comparatively speaking, his exercise of that trust and influence to have her take a photograph is arguably trivial “under the totality of circumstances in the case.” See United States v. Cavera, 550 F.3d 180, 191 (2d Cir.2008) (in banc).
The district court imposed a two-point enhancement for distribution. However, nothing was posted on the internet, or multiplied, or sold. The image was transmitted to a man with whom K.T. was lawfully privileged to cohabit, and by him to a single additional person, who was also classed as an adult under state .law. Broxmeyer is not one of those “most dangerous offenders” who “distribute child pornography for pecuniary gain.” See Dorvee, 616 F.3d at 187.
The district court applied the enhancement entirely on the bases that [i] K.T. sent the image of herself in her underwear to Broxmeyer at his urging, and [ii] Broxmeyer transmitted the image to one other minor, A.W. (who was also 17).
KT.’s sending of the (underclothed) image of herself to Broxmeyer arguably satisfies the requisites for a distribution enhancement — technically. But the transmission is no appreciable increment to the evil of the offense: Why indeed would Broxmeyer solicit a self-photograph from K.T. unless he wished to receive it?
The majority sustains the distribution enhancement solely on the basis of Broxmeyer’s re-transmission to A.W. As the majority opinion explains, an offense includes “ ‘all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context.’” Maj. Op. at 282 n. 19 (quoting U.S.S.G. § 1B1.1 cmt. n.l(H)). However, Broxmeyer’s retransmission to A.W. is not “relevant conduct” under § 1B1.3 because it did not occur “during the commission of the offense of conviction, in preparation for that offense, or in the'course of attempting to avoid detection or responsibility for that offense” and was not “harm that'resulted from [such] acts or omissions ... [nor] harm that was the object of such acts and omissions.” U.S.S.G. § 1B1.3 (a)(1), (a)(3). The application of that test was recently reaffirmed and emphasized in United States v. Wernick, 691 F.3d 108, 113-14 (2d Cir.2012). It therefore matters that *301 the offense itself was getting K.T. to make the picture, and was over when she made it or when she sent it to Broxmeyer.
The majority opinion attempts to elide this considerable impediment by expanding the offense of conviction temporally so that it is still ongoing when the re-transmission to A.W. takes place. The majority opinion does this by relying on Broxmeyer’s later — successful—efforts to induce K.T. to take and send a nude photo of herself. Maj. Op. at 282-83. The wording of the indictment does not allow the expansion that the majority opinion undertakes. The indictment for attempted production is limited to Broxmeyer’s
attempt[ ] to ... induce ... a minor female to create and produce a photograph of herself engaged in sexually explicit conduct and whereby th[at] minor female created and produced a photograph of herself wearing only her underwear. ...
Indictment, United States v. Broxmeyer, at 2. By definition, Broxmeyer’s successful effort was not an “attempt,” and the nude photograph Broxmeyer elicited and retransmitted was not one of a person “wearing ... underwear.”
The majority opinion dilates upon the applicability of each of these enhancements. I don’t doubt that they may apply, but in no more than a literal, textual, mechanical, formalistic way. In my view the majority and the district court fail adequately to consider whether these enhancements “can bear the weight assigned to [them] ... under the totality of circumstances in the case.” Cavera, 550 F.3d at 191. In this instance, each enhancement is for conduct or a circumstance that only arguably falls within the fuzzy edge of the outer reaches of the Guidelines.
Considered separately or cumulatively, these three considerations form no basis for escalating the sentence from the base offense level of 32 (below the 15-year mandatory minimum) to an offense level of 39 (with grouping), at which the Guidelines suggest imprisonment for 262 to 327 months.
Ill
This already-inflated adjusted offense level was boosted by a five-point enhancement for a pattern of prohibited sexual misconduct, U.S.S.G. § 4B1.5(b), because attempted production is a “covered sex crime,” id. § 4B1.5 cmt. n.2. The circumstances of this case, however, do not begin to bear the weight of that five-level enhancement.
The majority sustains the pattern enhancement on the basis of two predicates: [i] the attempted production that is the very offense of conviction, plus [ii] the facts underlying a now-reversed conviction under the Mann Act.[5]
A pattern of prohibited sexual conduct requires “at least two separate occasions [on which] the defendant engaged in prohibited sexual conduct with a minor.” U.S.S.G. § 4B1.5 cmt. n.4(B)(i). “An occasion of prohibited sexual conduct may ... occur[] during the course of the instant offense.” Id. § 4B1.5 cmt. n.4(B)(ii). However, it is more than dubious for the prohibited sexual conduct to be the very offense that is being enhanced.[6] Absent *302 that piling on, there is no pattern, even under the majority’s analysis.
It is therefore hardly worth dealing with the sole remaining predicate (Broxmeyer’s conviction for interstate transportation of a minor with intent to engage in criminal sexual activity), except to observe briefly that such a predicate is also dubious. The Mann Act conviction was reversed by this Court for want of the interstate transport element. Broxmeyer I, 616 F.3d at 127-30. The majority opinion therefore relies on what it thinks is left of the jury verdict,[7] coupled with the principle that a pattern enhancement to a federal offense can be composed of state offenses that would be federal offenses if done on the high seas or in a post office. Maj. Op. at 285, 286-87 (citing 18 U.S.C. § 2426(b)(1)(B)). This analysis did not occur to the district court. No wonder.
Instead the district court relied on the several untried offenses detailed in the fact sections of the majority opinion — and not used in the majority’s analysis. See PreSentencing Report at ¶ 48; Re-Sentencing Tr. at 5:14-19 (adopting Probation Department’s calculation), 24:3-4 (referencing Broxmeyer’s “extensive history of sexually abusing children”). The majority is cautious enough to avoid relying on those incidents because of the vexing constitutional questions such reliance would raise. See Gall v. United States, 552 U.S. 38, 60, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (Scalia, J., concurring) (discussing Rita v. United States, 551 U.S. 338, 371-75, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (Scalia, J., concurring)). Thus the majority has substituted one pattern, which it perceives, for the pattern relied on by the district court. That substitution runs counter to the theme, passim in the majority opinion, that sentencing is a matter of the district judge’s discretion, not ours. I am left in considerable doubt as to whether the district judge would have imposed the pattern enhancement relying on the majority’s analysis, and not on the facts found in sentencing.[8]
*303 Like the majority, I will forgo discussion of the procedural and constitutional problems that beset the district court’s approach. But it is surely remarkable that virtually the whole vast differential, between the 15-year mandatory minimum and the 30-year statutory maximum sentence imposed, is attributable to conduct that is no federal offense: the conduct that formed the defective basis for the (now reversed) Mann Act charge was a state conviction on which Broxmeyer is serving a concurrent four-year state sentence.
IV
The five-level “pattern” enhancement raised Broxmeyer’s offense level to 44 — an upper limit automatically reduced to 43 for a sentence of life imprisonment. That calculation — if not actually procedural error — is sound only as a matter of arithmetic and accounting. But it proves too much: something needs to be re-thought when in a case like this, the Guidelines calculation yields a life sentence. That is the sentence imposed on Jeffrey Dahmer, who killed people, and ate them.
The life sentence was automatically reduced to the statutory maximum of 30 years. A statutory maximum is appropriate only for the worst offenders. Unfortunately, we have seen such defendants. They are people who force small children to engage in sexual and sadomasochistic acts, who photograph or video the scene, and who broadcast it to the world, leaving the children with the pain of the experience and the anguish of knowing that degenerates are gloating over their abuse and humiliation.
Broxmeyer’s offense would seem to be at the other end of the continuum. I therefore believe that a sentence exceeding 15 years is substantively unreasonable.
The majority opinion responds that there were no procedural errors in applying enhancements that reached a Guidelines sentence of imprisonment for life. But the tests for procedural and substantive reasonableness should be crosschecks; here, the first operates as the enemy of the second. The majority never really gauges whether the enhancements can truly “bear the weight assigned to [them] ... under the totality of circumstances in the case.” Cavera, 550 F.3d at 191.
The majority floats the idea that the 30-year sentence is some kind of indulgence. Thus the majority opinion claims that Broxmeyer received a below Guidelines sentence because the range resulting from the enhancements was imprisonment for life. Maj. Op. at 281-82 n. 18, 295, 296-97. This is not even technically sound, because a statutory maximum caps any Guidelines sentence. U.S.S.G. § 5Gl.l(a). The majority opinion also suggests that 40 years of incarceration would have been substantively reasonable, and treats as a mercy the district court’s decision to make concurrent the ten-year sentence for possession because the district court itself concluded that continuous sentences amounting to 40 years of incarceration was excessive. See U.S.S.G. § 5G1.2(c)-(d). I suppose I must concede that the majority opinion would as well support a 40-year sentence as it does a sentence of 30 years. But the majority opinion is as extreme in its way as the arbitral decision in which a teacher who molested students was returned to the classroom. In re *304 Unadilla Valley Cent. Sch., 97 A.D.3d 1078, 949 N.Y.S.2d 518 (3d Dep’t 2012) (affirming the arbitral award).
I cannot see how Broxmeyer’s offense can justify a sentence above the stiff, 15-year mandatory minimum. The majority opinion responds that Broxmeyer’s offense is not absolutely the most innocuous conceivable offense, and posits the hypothetical case of a “defendant [who] succumbed to temptation on one occasion to use one girl in an attempt to produce one image of child pornography.” Maj. Op. at 291. Even assuming (as I must) that this hypothetical offender would be less culpable than Broxmeyer, the majority opinion’s error of law is to hold that only such a hypothetical offender can claim that a sentence above the mandatory minimum is substantively unreasonable. Maj. Op. at 290 (“[A district court] hardly abuses its discretion” by “imposing] a sentence of more than 15 years whenever it identifies aggravating factors in the commission of a § 2251(a) crime”). If any sentence between the minimum and the maximum is substantively reasonable as a matter of law unless the offense borders on innocence itself, there is no such thing as substantive unreasonableness in this area.
The assumption that any offense other than the most innocuous deserves a sentence above the mandatory minimum runs counter to the Sentencing Commission’s approach. For many child pornography offenses, the Commission sets the base offense level below the mandatory minimum (knowing that the usual enhancements will raise the Guidelines range to the minimum). U.S. Sent’g Comm’n, The History of the Child Pornography Guidelines 45-46 (2009). Accordingly, the mandatory minimum is not reserved only for the minimal offense, but includes a considerable range of bad conduct that certainly includes Broxmeyer’s offense of conviction.
The majority opinion likens the substantive unreasonableness standard to the “shoeks-the-conscience” 18 standard used in substantive due process analysis. I accept the analogy. I don’t claim that my aging conscience is especially tender, but it is still capable of shock; and it is shocked by a 30-year term of incarceration for the offense of attempting to persuade a woman who is of the age of consent to take a lewd photograph of herself and send it.
Y
The factors listed at 18 U.S.C. § 3553(a) do not support a sentence at the 30-year maximum, which means that Broxmeyer’s sentence is substantively unreasonable. United States v. Jass, 569 F.3d 47, 65 (2d Cir.2009); see also Cavera, 550 F.3d at 189. A 30-year prison sentence is far “greater than necessary[ ] to comply with the purposes set forth in [§ 3553(a)(2)].” 18 U.S.C. § 3553(a). Fifteen years in prison is a sentence more than sufficient to reflect the seriousness of the offense for which Broxmeyer was convicted. Such a lengthy term of incarceration, taken together with the collateral consequences of his conviction (including a life term of supervision upon his release, and an obligation to register as a sex offender, Amended Judgment), ensure that Broxmeyer is adequately deterred and that the public is sufficiently protected. I see no prospect that Broxmeyer will again coach young women.
Thus it is that, in a case in which the underlying offense is attempted sexting, a Guidelines analysis that exceeds life in prison is deemed flawless; the imposition of a maximum sentence is treated as a *305 downward departure; 40 years is suggested in dicta to be reasonable; a 30-year maximum sentence is affirmed, with the seemingly wistful misgiving that a 40 year sentence — achievable by piling maximum upon maximum — was a missed opportunity; and 15 years of imprisonment is deemed minimal because it has been set as the mandatory minimum.

.This Court described the conduct of conviction as sexting in United States v. Broxmeyer, 616 F.3d 120, 123, 124, 126 (2d Cir.2010) (hereinafter "Broxmeyer I"). The word has entered common usage for the reason that it has become a common practice. Rene Lynch, 'F-bomb,' 'sexting’ among new Merriam-Webster dictionary words, L.A. Times, Aug. 14, 2012, available at http://www. latimes. com/news/nation/nationnow/la-na-nnf-bomb-dictionary-20120814,0,2597300.story (last accessed Aug. 16, 2012).

. Broxmeyer I, 616 F.3d at 127-30.

. For example, the majority opinion recounts Broxmeyer's use of force in sexual encounters. Maj. Op. at 271-74. But the majority cannot dispute that the district court made no findings as to whether Broxmeyer used force or whether each uncharged sexual encounter was, in fact, criminal.

. On the possession'count, the other images were unambiguously pornographic.

. The majority could not count the conviction for possession of child pornography because that offense is not a predicate to this enhancement. See U.S.S.G. § 4B1.5 cmt. n.4 (A).

. Leaving aside that a pattern usually is more than two and that a normal reading of "pattern” is best supported by a pattern enhancement when there are two predicates (which may occur during the commission of the en *302 hanced offense) plus the offense itself, the majority opinion contends that "during the course of the instant offense,” U.S.S.G. 4B1.5 cmt. n.4(B)(ii), invites counting the very offense being enhanced. Maj. Op. at 285 & nn. 22-23. The majority relies on two out-of-circuit opinions that are unpersuasive: the quoted passages, consigned to footnotes, are dicta. In those cases, each defendant committed at least two (and, in one case, more than one hundred) predicate acts actually counted to establish a pattern, separate from the offense of conviction. See United States v. Al-Cholan, 610 F.3d 945, 955 (6th Cir.2010); United States v. Rothenberg, 610 F.3d 621, 625-27 (11th Cir.2010).
The wording of the commentary is that a predicate "may be considered whether the occasion [inter alia ] occurred during the course of the instant offense.” U.S.S.G. § 4B1.5 cmt. n.4(B)(ii) (emphasis added). If a pattern enhancement was meant to be applied to count a predicate that is the instant offense, the Guidelines would allow the enhancement if the instant offense is a "covered sex crime” and the defendant has committed one other predicate act.

. The majority opinion emphasizes that this Court in Broxmeyer I identified no problem with the sufficiency of evidence. Maj. Op. at 271. That is correct insofar as we reversed on another basis. But Broxmeyer did not concede that the evidence was sufficient, and we had no occasion to consider yet another reason to reverse his Mann Act conviction. See Broxmeyer Br., Broxmeyer I, No. 09-1457-cr, at 38-39 ("Althoughperhaps producing sufficient evidence to prove the second and third elements of the offense, the government failed to prove that Broxmeyer transported her across state lines.” (emphasis added)). Broxmeyer certainly had no obligation to pile on additional arguments beyond that for which he prevailed in having his conviction reversed, just so he could argue upon re-sentencing that he had not conceded what may have been other bases for attacking his conviction had the conviction not already been fatally flawed.

. It seems to me that the most an appellate court should do in that circumstance is to reject or cast doubt on the basis for the district court’s ruling, identify possible alternative predicates, and remand.