12-5113-cv
MACLEOD V. TOWN OF BRATTLEBORO

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27ᵗʰ day of November, two thousand thirteen.

PRESENT: DENNIS JACOBS,
    BARRINGTON D. PARKER,
    DENNY CHIN,
        **Circuit Judges**.

- - - - - - - - - - - - - - - - - - - - - -X
DANA MACLEOD,
   **Plaintiff-Appellant**,

   **-v.-**            **12-5113-cv**

TOWN OF BRATTLEBORO and CHAD EMERY,
   **Defendants-Appellees**.
- - - - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:    THOMAS W. COSTELLO and James A. Valente, Costello Valente & Gentry, PC, Brattleboro, Vermont.

FOR APPELLEES:    James F. Carroll, English Carroll & Boe, PC, Middlebury, Vermont.

Nancy G. Sheahan and KEVIN J. COYLE, McNeil Leddy & Sheahan, PC, Burlington, Vermont.

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Appellant Dana MacLeod appeals from the judgment of the United States District Court for the District of Vermont (Reiss, <u>C.J.</u>), granting summary judgment in favor of appellees Officer Chad Emery and the Town of Brattleboro (the "Town") (collectively, "Appellees") on MacLeod's claim, brought under 42 U.S.C. § 1983, that Officer Chad Emery used excessive force against MacLeod in violation of the Fourth Amendment to the United States Constitution.[1]  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"'We review a grant of summary judgment <u>de novo</u>, construing the record in the light most favorable to the non-moving party.'"  <u>Gilles v. Repicky</u>, 511 F.3d 239, 243 (2d Cir. 2007) (internal quotation marks omitted). "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 197 (2004) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989)).  Assessing whether the use of force to make an arrest is "reasonable" under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396 (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)).  "[T]he factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the

---

[1]  In addition, MacLeod lodged claims against Officer Emery under Vermont law, and against the Town under § 1983 for "unconstitutional policy and practice / inadequate training."  MacLeod does not appeal the district court's grant of summary judgment to Appellees on these claims.

time." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004). The balancing must be done with sensitivity to the factual circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Once the court has determined the relevant undisputed facts and drawn all inferences in favor of the nonmoving party, the court's determination of reasonableness at the summary judgment stage is a pure question of law, and must be made from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Here, the relevant facts are undisputed. MacLeod was tased by Officer Emery after leading another police officer, Officer Adam Belville, on a high-speed chase through the rainy, "slick" streets of Brattleboro in the pre-dawn hours of September 28, 2009. MacLeod Dep. 62:12. MacLeod was originally pulled for speeding. When Officer Belville approached the vehicle to speak with the driver, MacLeod sped off without warning--nearly sideswiping Officer Belville--and a chase ensued that placed the officers, the passenger, and other motorists and any pedestrians in substantial, immediate danger.

MacLeod concedes that "the seriousness of his crimes prior to the use of force was not trivial[,]" but he nonetheless claims that the use of force was unreasonable because he had "voluntarily ceased his criminal conduct and was attempting to surrender at the time he was tased[.]" Appellant's Br. 15. Whatever MacLeod's subjective intent, the undisputed facts demonstrate that after suddenly speeding away from an investigating officer on "slick," dark roads at "a rate of speed higher than the speed limit" to evade arrest, MacLeod Dep. 61:20-21, he entered into a deserted a parking lot, exited the vehicle, kneeled on the ground, and then--contravening clear, repeated instructions

3

that he acknowledges he understood[2]--rose to his feet, turned to face the officers with his hands free and outstretched, and refused to return to the ground.  Rising from the ground rather than submitting to arrest exacerbated a "tense, uncertain, and rapidly evolving" situation that threatened the lives of officers, bystanders, and MacLeod himself.  Graham, 490 U.S. at 397.

Viewed objectively, MacLeod's actions immediately prior to being tased do not evince "passive resistance" merely because MacLeod was not actually in the act of fleeing.  Cf. Crowell v. Kirkpatrick, 400 F. App'x 592, 595 (2d Cir. 2010) (finding use of taser reasonable in part because "[protesters] were actively resisting their arrest at the time they were tased by the officers in this case, having chained themselves to a several hundred pound barrel drum and having refused to free themselves"); Davis v. Callaway, 2007 U.S. Dist. LEXIS 29468, at *14 (D. Conn. Apr. 9, 2007) (noting that "[officer] could reasonably have interpreted [arrestee's] previous noncompliance, i.e., standing up, as indicative of the possibility of further resistance").

Officer Emery used a Taser, once, to subdue an actively non-compliant suspect reasonably believed to be engaged in dangerous criminal activity and who posed a real and imminent threat to the safety of the officers and any bystanders.[3]  In that situation, it was reasonable for Officer Emery--after repeated, clear commands that MacLeod return to the ground--to decided that using the Taser was required to effect the arrest.  This avoided a "hands-on" situation with an unrestrained, dangerous individual.  Tracy v. Freshwater, 623 F.3d 90, 97 (2d Cir. 2010) ("From [the officer's] perspective, a suspect he strongly--and

---

[2]    MacLeod's briefing argues that he could not hear the officers' instructions to remain on or return to the ground.  In his deposition, however, MacLeod stated that he could in fact hear "clearly" the officers' instructions. MacLeod Dep. 91:22-24.  Moreover, the passenger evidently overheard the officers' instructions, as he complied fully.

[3]    Indeed, because MacLeod was unsubdued and had made one clear attempt to evade arrest, "the scope of crime in question was not simply [speeding], but was unknown and potentially far more serious."  Tracy v. Freshwater, 623 F.3d 90, 97 (2d Cir. 2010).

4

correctly--presumed to be a fugitive from the law, made a quick and sudden movement as [the officer] attempted to effect an arrest without the assistance of other officers. His decision to use his flashlight to protect himself and subdue an arrestee he perceived to be actively resisting was therefore a reasonable response."). Given the totality of these circumstances, no rational factfinder could conclude that the officer's course of action was unreasonable. Accordingly, Officer Emery's actions did not violate the Fourth Amendment.

For the foregoing reasons, and finding no merit in MacLeod's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK